**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROBERT L. GRANT,

Plaintiff,

v. Case No.: 3:24-cv-101-TJC-LLL

FLORIDA DEPARTMENT OF CORRECTIONS,
et al.,

Defendants.

---

# ORDER

Plaintiff Robert L. Grant, a Florida state prisoner serving a life sentence and housed in the Union Correctional Facility, brings this action pro se under 42 U.S.C. § 1983. Grant, who suffers from Hepatitis C virus (HCV), argues that his rights secured by the Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the Eighth Amendment were violated when defendants delayed in providing him HCV treatment because of a cost-saving policy.

Grant names 11 defendants, and all but one defendant move for dismissal. Grant names as defendants the Florida Department of Corrections (FDOC); former Secretaries of the FDOC, Ricky Dixon, Mark Inch, and Julie Jones; as well as former FDOC Health Services Director, Thomas Reimers

(collectively "FDOC defendants"). FDOC defendants jointly move to dismiss. See Doc. 37. Grant also names as defendants two entities contracted to provide medical care to prison inmates: Centurion of Florida, LLC (Centurion); and Corizon Health, Inc. (Corizon). Centurion moves to dismiss, see Doc. 26, and the claims against Corizon have been stayed.[1] Finally, Grant names as defendants four former Chief Health Officers at Union Correctional Institution: Ernesto Toledo, M.D.; E. Perez Lugo, M.D.; Errol Campbell, M.D.; and Asbelti Llorens Cordero, M.D (collectively "Chief Health Officer defendants"). Chief Health Officer defendants individually move for dismissal. See Docs. 27 (Campbell), 30 (Llorens), 43 (Perez Lugo), 49 (Toledo).

## I. Grant's Complaint

Grant alleges that he has been a prisoner in the custody of the FDOC since July 9, 1980. Doc. 1 at 28. Throughout his incarceration, he has been housed primarily at Union Correctional Institution and under the continual care of the FDOC, Corizon, and Centurion. Id. In 2019, a "routine" blood test revealed that Grant was positive for HCV. Id. at 28 and 35. Grant was confirmed to have "fibrosis level 4 and compensated cirrhosis." Id. at 28. He was informed that his HCV was "Genotype 1A, a more severe type of the viral disease . . . that may be associated with decreased responsiveness to therapy."

[1] An order entered January 10, 2025, stays Grant's claim against Corizon pending the resolution of Corizon's bankruptcy proceedings. Doc. 61.

Id. at 32.

Upon diagnosis, Grant was referred to the prison's Chronic Illness Clinic for consultation. Id. at 35. He began receiving treatment for his HCV on November 15, 2019. Id. at 32. He received a Direct Acting Antiviral (DAA) drug known as Epclusa. Id. Grant's "84-day long treatment concluded on February 1, 2020." Id. Grant is "now, hopefully cured of the viral infection, [but] is still an F4 . . . and has compensated cirrhosis of his liver." Id. at 34.

Grant's level 4 fibrosis and compensated cirrhosis were caused by the delay of timely treatment of his HCV. Id. at 36. He contends that defendants should have treated him earlier, but they "deliberately chose not to because of the cost of the medication." Id.

Between September 11, 2023, and January 25, 2024, Grant requested his medical records including his blood test results and reports from sonograms administered between January 1, 2013, and September 9, 2023. Id. at 29. When he filed his Complaint January 25, 2024, Grant was still waiting for the requested medical records. Id.

Grant's Complaint contains three counts. In Count I, Grant sues the FDOC for violating his rights under Title II of the ADA. Id. at 36–41. He alleges that the FDOC "denied and delayed providing [him] with the necessary treatment and reasonable accommodation for his HCV because of the cost of the treatment and accommodation." Id. at 39–40. In Count II, Grant sues the FDOC

for violating his rights under Section 504 of the Rehabilitation Act. Id. at 41–43. He alleges that the FDOC "excluded [him]—a qualified individual with a disability—from participating in, and denied him the benefits of, programs or activities solely by reason of his disability (chronic HCV)." Id. at 42. In Count III, Grant sues Centurion and Corizon for violating his Eighth Amendment rights. Id. at 43–45. He alleges that, by denying or delaying treatment for his HCV, Centurion and Corizon were deliberately indifferent to his serious medical needs. Id. at 44. Grant seeks to recover compensatory and punitive damages and injunctive relief. Id. at 45–48.

## II. Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly,

550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

"Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (1998). However, the "leniency" provided to pro se litigants "does not give a court license to serve as de facto counsel for

a party, or to rewrite an otherwise deficient pleading." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (cleaned up). "The relevant question is what claims the parties made, not what claims could have been made." Bennett v. United States, No. 25-12187, 2026 WL 671692, at *1 (11th Cir. Mar. 10, 2026) (citing Nalco Co. v. Bonday, 142 F.4th 1336, 1341 (11th Cir. 2025)).

## III. Discussion

### A. FDOC Defendants' Motion to Dismiss (Doc. 37)

FDOC defendants move to dismiss Grant's claims because they are barred by the statute of limitations.[2] Doc. 37 at 1. Notably, they contend Grant filed his Complaint more than four years after he knew or should have known that he had been injured by the FDOC's alleged delay in treating him for HCV. They argue that the limitations period began to run on November 15, 2019, the date on which Grant began receiving DAA treatment, and the limitation period ended four years later, on November 15, 2023. Because Grant did not file his Complaint until January 25, 2024, FDOC defendants maintain it is untimely.

Furthermore, FDOC defendants argue that the continuing violation doctrine does not save his untimely Complaint. Even if FDOC defendants'

[2] Because the Court finds that FDOC defendants' Motion is due to be granted as to their statute of limitation argument, the Court need not address FDOC defendants' remaining arguments.

alleged conduct constitutes a continuing violation, they argue, the alleged continuing violation ceased—and the limitation period began to run—on the date Grant began receiving treatment: November 15, 2019.

In response, Grant does not suggest an alternative date on which he believes the limitations period began. Rather, he generally argues that the limitations period was tolled while he exhausted his administrative remedies. He points to an administrative grievance he filed on November 4, 2023, in which he sought "to obtain the necessary medical records to state a claim for relief."[3] Doc. 40 at 7. Such grievance was necessary, Grant argues, because his "previous attempts to request medical record information were either incomplete or not answered at all in September and October of 2024."[4] Id. He argues that defendants' "obfuscation and obstruction of [him] obtaining the necessary medical records" has hindered his ability to pursue his claims.[5] Id. at 4. And he

[3] Grant filed the grievance dated November 4, 2023, as an attachment to his "Motion Requesting Permission to Amend at Later Date" (Doc. 3), which he filed contemporaneously with his Complaint. Doc. 3-1 at 2. The Court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss. See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

[4] Grant's Complaint may contain typographical errors because the chronology of these events—the filing of a grievance in 2023 for medical records requested but not received a year later in 2024—is illogical. Nevertheless, the Court accepts as true all allegations contained in the Complaint.

[5] Additionally, Grant emphasizes that the "Motion Requesting Permission to Amend at Later Date" (Doc. 3), filed contemporaneously with his Complaint, shows defendants' attempts to frustrate his ability to obtain necessary medical records. In that motion, Grant preemptively moved to amend his Complaint once he received additional medical records. The Court granted the motion "to the extent that the Court

suggests that these records show that "[defendants] were more likely than not well aware of [his] condition long before 2019." Id. Also, he references a grievance he filed on November 28, 2023,[6] in which he complained that FDOC defendants failed to treat him for HCV "in a timely manner." Id. at 7.

Here, the parties agree that the applicable statute of limitations for Grant's claims against FDOC defendants is four years. Indeed, "[f]ederal law governs when a federal civil rights claim accrues." See Karantsalis v. City of Miami Springs, Fla., 17 F.4th 1316, 1322 (11th Cir. 2021). "Generally, 'the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003) (quoting Rozar v. Mullis, 85 F.3d 556, 561–62 (11th Cir. 1996)).

The continuing violation doctrine is an "equitable doctrine [that] permits a plaintiff to bring an otherwise time-barred claim if the 'defendant's actions violate a plaintiff's rights on a repeated or ongoing basis.'" Holland v. Governor of Ga., No. 25-14515, 2026 WL 1329206, at *2 (11th Cir. May 11, 2026) (quoting Doe ex rel. Doe #6 v. Swearingen, 51 F.4th 1295, 1305 (11th Cir. 2022)). "When

---

will enter appropriate orders should it find such action is necessary." Doc. 5 at 2. However, Grant has filed no motion to amend his Complaint.

[6] No grievance dated November 28, 2023, is attached Grant's Complaint. However, the November 28, 2023, grievance appears in the record as an attachment to Centurion's Motion to Dismiss. Doc. 26-1 at 35.

the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007)[7]; see also Baker v. Sanford, 484 F. App'x 291, 293 (11th Cir. 2012) ("[A]n 'allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.'") (quoting Lavellee v. Listi, 611 F.2d 1129, 1132 (5th Cir. 1980)).

Here, the continuing violation doctrine does not save Grant's claims because he should have known to file suit—at the latest—on November 15, 2019, the day he began receiving treatment for his HCV. Notably, "[i]f an event 'should have alerted a reasonable person to act to assert his rights at the time of the violation,' a victim 'cannot later rely on the continuing violation doctrine' because it is 'equitable in nature.'" Holland, 2026 WL 1329206, at *2 (quoting Swearingen, 51 F.4th at 1308). According to Grant, he was diagnosed with HCV in November 2019 after a routine blood test and began receiving treatment that same month, on November 15. He makes no allegations that before his November 2019 diagnosis he was experiencing any symptoms or made any

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

requests for medical care or HCV treatment. Cf. Baker, 484 F. App'x at 293 (concluding that prison officials' denial of the prisoner's repeated requests for medical treatment for an ongoing infection constituted a continuous injury). The diagnosis and beginning of treatment should have alerted him to pursue his claims challenging the medical care (or lack thereof) he received. Therefore, the limitations period began to run—at the latest—on November 15, 2019. See Turner v. Florida Dep't of Corr., No. 3:23-cv-952-BJC-LLL, 2024 WL 3470340, at *3 (M.D. Fla. July 19, 2024) (finding that "the facts to support a cause of action were apparent . . . when Plaintiff began receiving treatment [for HCV] [and] the alleged continuing violation ceased"). The limitation period then ended four years later, on November 15, 2023. His Complaint is untimely because it was filed January 25, 2024, 71 days after the statute of limitations expired. See Doc. 1 at 56.

In an attempt to overcome this defense, Grant offers an inadequate and speculative explanation for waiting to bring this suit. Cf. Swearingen, 51 F.4th at 1308 (holding that the continuing violation doctrine saved plaintiffs' claims because they provided an "adequate justification" for "waiting to bring the[m]"). Grant, through vague assertions, seemingly argues that FDOC defendants obstructed his ability to obtain medical records, and the medical records show FDOC defendants knew Grant had HCV "long before 2019." Doc. 40 at 4. However, the pertinent question for the limitations analysis is not when

defendants knew of Grant's HCV, but when an event "should have alerted a reasonable person to act to assert his rights." Swearingen, 51 F.4th at 1308. To that end, Grant should have been alerted to assert his rights about medical care when he began receiving HCV treatment. Accepting as true Grant's speculative allegation that unidentified medical records show "pertinent dates and facts" that support his claims, Doc. 40 at 4, Grant cannot state a timely claim because the limitations period began (and the alleged violation ceased) when he began receiving treatment. See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1280 (11th Cir. 2001) (ruling that a district court may dismiss a prisoner's complaint as barred by the statute of limitations only if it appears "beyond a doubt from the complaint itself that [he] can prove no set of facts which would avoid a statute of limitations bar").[8] Grant offers no logical explanation of how a medical record (assuming one exists) could support a finding that the limitations period began at a date after he started treatment for HCV.

Furthermore, the administrative grievances that Grant filed on November 4 and November 28, 2023, do not equitably toll the limitation period.

[8] To determine whether a civil rights action is barred by the statute of limitations, "a court must first identify the injuries that the plaintiff allegedly suffered and then determine when the plaintiff could have sued for them." Villalona v. Holiday Inn Express & Suites, 824 F. Appx. 942, 946 (11th Cir. 2020) (citing Rozar v. Mullis, 85 F. 3d 556, 562 (11th Cir. 1996)). Here, Grant alleges his rights were violated when defendants delayed treatment for his HCV. He asserts no claim for FDOC defendants' failure to provide him with medical records, and thus, the timeliness of such claim is not an issue before the Court.

In his grievance dated November 4, 2023, Grant requested medical records for a ten-year period from 2013 to 2023, including blood test results and records "concerning [his] liver and spleen[.]" Doc. 3-1 at 2. In his grievance dated November 28, 2023, Grant complained that the FDOC failed to treat his HCV "in a timely manner." Doc. 26-1 at 35.

The Eleventh Circuit Court of Appeals has expressly declined "to decide . . . the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion of remedies by a prisoner will operate to toll the statute of limitations. Leal, 254 F.3d at 1280 (remanding to allow the plaintiff the opportunity to argue that the limitations period may have been equitably tolled while he was exhausting his administrative remedies); see also Rager v. Augustine, 760 F. App'x 947, 950 (11th Cir. 2019) ("We've expressly declined to address the question of whether the statute of limitations can be tolled while a prisoner is in the process of exhausting his administrative remedies as a mandatory prerequisite for filing a federal lawsuit.") (citing Leal, 254 F.3d at 1280).

Nevertheless, Grant has not shown that his grievances equitably tolled the limitations period. "Statutes of limitations are not mere technicalities; they serve an important purpose in our legal system by requiring plaintiffs to pursue diligent prosecution of known claims." Zamudio v. Haskins, 775 F. App'x 614, 615 (11th Cir. 2019) (quotations omitted). Under the doctrine of equitable

tolling, "plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). "[T]he party seeking tolling [must] prove (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 971 (11th Cir. 2016) (quotation omitted). "Equitable tolling is an extraordinary remedy which is typically applied sparingly." Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000). "Generally speaking, equitable tolling is reserved for cases involving some affirmative misconduct or deception on the part of the adverse party." Zamudio, 775 F. App'x at 616. A "plaintiff bears the burden of demonstrating that equitable tolling is warranted." Id. at 615.

Grant fails to show he pursued his rights with reasonable diligence. He waited more than four years after he began receiving treatment for HCV (on November 15, 2019) to file his first grievance complaining that FDOC defendants had failed to treat him in a timely manner (on November 28, 2023). See Zamudio, 775 F. App'x at 617 (concluding that the prisoner failed to demonstrate reasonable diligence because he did nothing to pursue his rights for two years after he received no response to his request for a grievance form). He offers no explanation that would excuse his failure to act during this four-year period. See id. ("[The circuit court] has said that 'we have no difficulty

concluding, as a matter of law, that a plaintiff who does nothing for two years is not diligent.'") (quoting Villarreal, 839 F.3d at 972).

Furthermore, Grant offers no logical explanation as to why his lack of access to his medical records was an extraordinary circumstance that prevented him from pursuing his rights, particularly when he knew he had HCV and was treated for the virus in November 2019. Grant did not need medical records to tell him what he admits he already knew in November 2019—that he had HCV, level 4 fibrosis, and compensated cirrhosis—a diagnosis that required medical treatment. See Cline v. Pep Boys Manny Moe & Jack, LLC, No. 3:26-cv-565-MCR-ZCB, 2026 WL 1262142, at *6 (N.D. Fla. Feb. 18, 2026)[9] (declining to apply equitable tolling because "assuming as true that Plaintiff did not have available every piece of evidence related to the . . . incident, this does not change the fact that Plaintiff was aware of what occurred that day on account of being present for the alleged events").

To that end, all claims that Grant raises against FDOC defendants are barred by the statute of limitations. And, because Grant can prove no set of facts that would avoid a statute of limitations bar, the claims against FDOC

[9] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

defendants must be dismissed with prejudice. See Leal, 254 F.3d at 1280; United States v. Henco Holding Corp., 985 F.3d 1290, 1296 (11th Cir. 2021) ("[A] Rule 12(b)(6) dismissal based on a statute of limitations is appropriate only where it is apparent from the face of the complaint that the claim is time-barred.") (quotations omitted); see also Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (stating that a district court is not required to allow an amendment "where amendment would be futile"). As such, the FDOC Defendants' Motion is due to be granted because Grant's claims against FDOC defendants are barred by the statute of limitations.

**B. Centurion's Motion to Dismiss (Doc. 26)**

Centurion moves to dismiss Grant's Complaint because Grant fails to state an Eighth Amendment claim.[10] See Doc. 26 at 3-7. Centurion argues that Grant fails to allege that it has an unconstitutional policy or procedure that caused his alleged injuries. Id. at 7. Centurion also argues that Grant does not allege that the medical care he received was so inadequate so as to shock the conscience. Id.

Grant responds that he has sufficiently alleged that Centurion had a custom or policy of "misinforming inmates as to the true nature and progression of their disease, in order to cut costs and save money, which resulted in an

[10] Because the Court finds that Centurion's Motion is due to be granted as to its failure to state a claim argument, the Court need not address Centurion's other arguments.

unreasonable delay in treatment that caused [his] disease to progress[.]" Doc. 31 at 8. He asserts that medical records will show that Centurion "more likely than not [was] well aware of [his] condition long before 2019." Id. at 3.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834). As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834].

> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844-45.

Wade v. McDade, 106 F.4th 1251, 1261 (11th Cir. 2024) (enumeration and emphasis omitted);[11] see Stalley v. Cumbie, 124 F.4th 1273, 1283 (11th Cir. 2024) (recognizing that to prevail on a deliberate indifference claim, a plaintiff must show that he suffered "an objectively serious medical need," and that the defendant acted with deliberate indifference to that need, meaning that the defendant "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" (internal quotations and citations omitted)).

---

[11] For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence" standard in determining whether an official acted with deliberate indifference to an inmate's serious medical need. Wade, 106 F.4th at 1255. In Wade, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer and clarified that courts in this circuit should apply the "subjective recklessness" standard "as used in the criminal law." Id. at 1253. The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Id. at 1265 (Jordan, J., concurring).

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. Importantly, medical treatment gives rise to a constitutional violation "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Thus, a complaint that a medical provider has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotations and citation omitted).

Although Centurion is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Because Centurion contracts with the FDOC to provide medical services to state inmates, it is subject to suit under § 1983. However, where a deliberate

indifference medical claim is brought against an entity, such as Centurion, based on its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in Plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot stem from the theory of respondeat superior. Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003)); see Denno v. Sch. Bd. of Volusia Cnty., 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, like claims against a county, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

Because Centurion's liability under § 1983 would stem from its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Grant must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged federal constitutional violation. In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government

entity] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must allege that the constitutional deprivation resulted from "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating Monell "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" Grech, 335 F.3d at 1329 n.5 (quotation and citation omitted). Governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting

Pembaur, 475 U.S. at 483-84). A government entity rarely will have an officially adopted policy that permits a particular constitutional violation; therefore, to state a cause of action for damages under § 1983, most plaintiffs must show that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

Accepting Grant's allegations as true, the Court finds he has failed to state a plausible claim for relief against Centurion. Grant contends that between 2013 and 2017, Centurion had a cost-saving policy, practice, and custom of delaying DAAs to HCV positive inmates. Indeed, the crux of his claim against Centurion stems from the delay of his diagnosis and his suspicion that officials might have known about his HCV before 2019. "Delayed medical treatment can rise to the level of deliberate indifference when: (1) 'it is apparent that delay would detrimentally exacerbate the medical problem'; (2) the delay actually seriously exacerbates the problem; and (3) 'the delay is medically unjustified.'" Kenyon v. Silverman, No. 23-10235, 2024 WL 2831719, at *2 (11th

Cir. June 4, 2024) (quoting Taylor v. Adams, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (quotation omitted).

Grant's claim fails because he cannot show that Centurion's alleged policy of delaying HCV treatment caused his injuries. Although Grant has been incarcerated since 1980, the Complaint is devoid of any allegation that shows it was apparent that a delay would detrimentally exacerbate a medical problem, such as, that he complained of symptoms or other medical problems and those complaints or symptoms were ignored, or that he requested testing for HCV and was denied. Nor are there any facts in the Complaint that show that the alleged delay in treatment was medically unjustified, such as, that a doctor determined that Grant needed HCV treatment but refused to prescribe it because of a Centurion policy, or that a request for treatment was denied because of a Centurion policy. He simply makes a vague allegation that Centurion had a policy of delaying and denying treatment to save money. Cunningham v. Centurion of Fla., No. 4:21-cv-414-MW-MAF, 2025 WL 4053164, at *7 (N.D. Fla. Sept. 17, 2025), adopted by 2025 WL 3720365 (N.D. Fla. Dec. 23, 2025) (finding the same allegation was insufficient to state a claim for deliberate indifference). Grant's claim is insufficient because there are no facts to suggest "the delay of treatment for obviously serious conditions[.]" Taylor, 221 F.3d at 1259.

Furthermore, according to Grant's Complaint, as soon as he was diagnosed with HCV after a routine blood test, he received treatment the same

month, beginning November 15, 2019. And Grant makes no factual allegations that the 84-day treatment of DAA medication was insufficient in any way. Hoffer, 973 F.3d at 1271 (noting that medical treatment violates the Eighth Amendment "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness"). In fact, Grant alleges that he is "now, hopefully, cured of the viral infection." Doc. 1 at 34. Grant's allegations at most amount to a claim that Centurion was negligent concerning the timing of its administration of the routine blood test that identified his HCV diagnosis. Grant cannot state a claim under these facts because the law is clear that "[n]egligence in diagnosis or care does not constitute medical mistreatment." Kenyon, 2024 WL 2831719, at *2 (citing Estelle, 429 U.S. at 106). As such, Centurion's Motion to Dismiss is due to be granted as to its argument that Grant fails to state an Eighth Amendment claim against it.[12]

**C. The Chief Health Officer Defendants' Motions to Dismiss**

Defendants Toledo, Perez Lugo, Campbell, and Llorens were formerly employed by Centurion as Chief Health Officers at Union Correctional Institution. They individually move to dismiss Grant's claims against them for

---

[12] Centurion does not move for dismissal based on the statute of limitations. However, if Centurion had done so, Grant's Eighth Amendment claim against Centurion would have been barred by the statute of limitations for the reasons explained supra in section III. A.

failure to state a claim.[13]

### 1. Ernesto Toledo, M.D. (Doc. 49)

Toledo moves to dismiss Grant's claim against him because Grant fails to state a claim for relief against him.Doc. 49. Assuming Grant intended to allege an Eighth Amendment deliberate indifference claim against Toledo, such claim fails, Toledo argues, because Grant does not allege that Toledo was personally involved in providing medical care to him or that Toledo's actions amount to subjective recklessness. Toledo argues that Grant's allegations, at most, constitute a claim for medical negligence, which is not actionable under § 1983. Grant responds that he intends to allege an Eighth Amendment claim against Toledo in his individual capacity. Doc. 55 at 11.

The Complaint contains a subsection devoted to Toledo in which Grant alleges that Toledo failed to advise him of the "2014–2016 BFP-CDC treatment guideline range" and fabricated "excuses why [Grant] had not been treated" "in furtherance of Centurion's policy to save money." Doc. 1 at 23. Grant also alleges that Toledo "never mentioned the possibility of recommendation for a liver transplant" and "misrepresented medical facts[.]" Id.

---

[13] Because the Court finds that all Chief Health Officer defendants' motions are due to be granted as to their failure to state a claim argument, the Court need not address their remaining arguments. Additionally, if the Chief Health Officer defendants had moved for dismissal based on the statute of limitations, Grant's construed Eighth Amendment claims against these defendants would have been barred by the statute of limitations for the reasons explained supra in section III. A.

Grant's construed Eighth Amendment deliberate indifference claim against Toledo in his individual capacity fails. Accepting as true that Toledo neglected to advise Grant of treatment guidelines or the possibility of a liver transplant and fabricated excuses for not treating him, these actions do not amount to "subjective recklessness as used in the criminal law." Gantt v. Everett, 162 F.4th 1107, 1111 (11th Cir. 2025). Instead, they amount to Grant's disagreement with the medical care he did receive. Grant alleges that once he was diagnosed with HCV, he was referred to the prison's Chronic Illness Clinic and began receiving an 84-day course of DAA treatment during the same month he was diagnosed. "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989); see also Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) (finding that, although the plaintiff may have desired different modes of treatment, the "significant" medical care provided by the jail did not constitute deliberate indifference). "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [will not] support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Because Grant's allegations amount to complaints that Toledo neglected to offer additional or alternative treatment than the medical care he did receive, his claim against Toledo must be dismissed. See Estelle, 429 U.S. at 107 (observing

that, whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," which "does not represent cruel and unusual punishment"). As such, Toledo's Motion is granted as to his argument that Grant fails to state an Eighth Amendment claim against him.

**2. E. Perez Lugo, M.D. (Doc. 43)**

Perez Lugo moves to dismiss Grant's claim against him because Grant neglects to allege a plausible claim for relief. Again, assuming Grant intended to allege an Eighth Amendment deliberate indifference claim against him, such claim fails, Perez Lugo argues, because his alleged actions do not amount to subjective recklessness. Doc. 43. Grant responds that he alleges an Eighth Amendment deliberate indifference claim against Perez Lugo. Doc. 46 at 8.

The Complaint contains a subsection devoted to Perez Lugo in which Grant alleges that Perez Lugo "denied and delayed [his] treatment with the well-known proper level of medical treatment for the disease Hepatitis-C [DAA's], known since 2014." Doc. 1 at 25. He alleges that Perez Lugo "concealed necessary information" concerning treatment so that Grant "would not find out about the seriousness of the disease[.]" Id. at 25–26.

Grant's construed Eighth Amendment deliberate indifference claim against Perez Lugo must be dismissed. Although Grant vaguely alleges that Perez Lugo "concealed" information about HCV treatment to delay and deny

treatment, Grant fails to allege that Perez Lugo was personally involved in Grant's medical care, his diagnosis, or his treatment plan. Rather, Grant alleges, Perez Lugo had information about general HCV treatments that he withheld from Grant. But, in light of Grant's own allegations that he was referred to the Chronic Illness Clinic and began receiving an 84-day course of DAA treatment the same month he was diagnosed, Grant cannot show that Perez Lugo's alleged concealment of general treatment information amounted to subjective recklessness. Accordingly, Perez Lugo's Motion is due to be granted as to this argument, and Grant's Eighth Amendment claim against Perez Lugo dismissed for his failure to state a plausible claim for relief.

**3. Errol Campbell, M.D. (Doc. 27)**

Campbell moves to dismiss Grant's claims against him because he fails to state a claim against him. (Doc. 27) Assuming Grant intended to allege an Eighth Amendment deliberate indifference claim against Campbell, such claim fails, Campbell argues, because Grant does not allege he was personally involved in Grant's medical care or caused a constitutional violation. Grant responds that he intends to allege an Eighth Amendment deliberate indifference claim against Campbell. (Doc. 34)

The Complaint contains a subsection devoted to Campbell in which Grant alleges that Campbell assisted the FDOC in "setting the rules, supplied by e-mail memos, which . . . directed [the] Chief Health Officers to delay and thus

deny [him] [treatment]" and "concealed necessary information . . . concerning treatment" so that he and other inmates "would not find out the seriousness of [their] disease[.]" Doc. 1 at 24–25.

These vague allegations are simply not "enough to raise a right to relief [against Campbell] above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Grant fails to allege a constitutional violation resulted from Campbell assisting the FDOC in the preparation of unidentified rules or memos, nor does he allege that he was personally involved in Grant's medical care such that he caused the care to be delayed. Furthermore, he cannot allege that his conduct in assisting the FDOC in the preparation of rules or memos caused a constitutional violation because, according to Grant's own allegations, he received HCV treatment in the same month that he was diagnosed with HCV. And Campbell could not be subjectively reckless in delaying or denying Grant medical care when Campbell is not alleged to have been personally involved in providing Grant's medical care. "The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." Id. (alterations and quotations omitted). Accordingly, Campbell's Motion to Dismiss is due to be granted as to this argument and Grant's Eighth Amendment claim against Campbell is dismissed.

**4. Asbelti Llorens Cordero, M.D. (Doc. 30)**

Finally, Grant sues Llorens for denying his grievance request to review

his medical records.[14] Doc. 1 at 25–26. Llorens moves to dismiss this claim because he was not personally involved in Grant's medical care and because Grant fails to allege that his denial of the grievance caused his injuries. Id. at 4. Grant responds that Llorens's deliberate indifference "is demonstrated by the denial of [his] medical grievance," which, according to Grant, contains an inaccurate statement about the dates of his DAA treatment. Doc. 38 at 4–5.

As with the other Chief Health Officer defendants, the Complaint fails to contain sufficient allegations to state an Eighth Amendment claim against Llorens. Grant alleges that Llorens "has denied access to [his] complete medical records" dating from January 1, 2013, to September 9, 2023. Doc. 1 at 26–27. Grant complains that Llorens "stated in his grievance denial that an F-Score for [Grant] has been reduced from an F4 to an F3 which is inconsistent as a possibility." Id. at 27. Grant alleges that Llorens's refusal to allow Grant access to his medical records constitutes deliberate indifference. Id.

To the extent Grant intends to base his Eighth Amendment claim on Llorens's alleged denial of Grant's grievance, such claim fails. A prisoner has no constitutional right to participate in grievance procedures. Wildberger v.

[14] Grant seeks prospective injunctive relief from Llorens, including a "recommendation for possible liver transplant" and future medical care. Doc. 1 at 47–48. He is not entitled to this relief because his claim against Llorens (concerning the denial of a grievance request for medical records) is not related to his claim that he received delayed medical care. Because he fails to state a deliberate indifference claim against Llorens, he is not entitled to injunctive relief.

Bracknell, 869 F.2d 1467, 1467–68 (11th Cir. 1989) (holding that a violation of the grievance procedure did not rise to the level of a constitutional violation because there is no constitutional right to a grievance procedure); Thomas v. Warner, 237 F. App'x 435, 437–38 (11th Cir. 2007) ("A prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."). Furthermore, Llorens's denial of Grant's grievance is not sufficient to demonstrate he was personally involved in Grant's medical care, and Grant otherwise does not allege Lorens was personally involved in Grant's medical care. "[A]llegations of a defendant's involvement in the processing of a prison grievance regarding medical care specifically fails to demonstrate a defendant's personal involvement in the alleged constitutional misconduct of deliberate indifference to a medical need." Gillis v. Smith, No. 5:22-cv-00027-TES-CHW, 2022 WL 1516311, at *8 (M.D. Ga. May 13, 2022), adopted by, 2022 WL 2287929 (June 24, 2022). Finally, Grant's claim fails because he cannot show that Llorens's response to his grievance request for medical records caused the progression of his HCV-related medical injuries. Geobert, 510 F.3d at 1326. Accordingly, Grant fails to state a plausible Eighth Amendment claim against Llorens for his alleged mishandling of Grant's grievance request for his medical records, and Llorens's Motion to Dismiss is due to be granted as to this

argument.[15]

## IV. Conclusion

Accordingly, it is **ORDERED**:

1. The following motions are **GRANTED**:

    a. The FDOC defendants' Motion to Dismiss (Doc. 37)

    b. Centurion's Motion to Dismiss (Doc. 26)

    c. Ernesto Toledo, M.D.,'s Motion to Dismiss (Doc. 49)

    d. E. Perez Lugo, M.D.,'s Motion to Dismiss (Doc. 43)

    e. Errol Campbell, M.D.,'s Motion to Dismiss (Doc. 27)

    f. Asbelti Llorens Cordero, M.D.,'s Motion to Dismiss (Doc. 30)

2. The claims as to the following defendants are **DISMISSED WITH PREJUDICE**: Florida Department of Corrections, Ricky Dixon; Mark Inch; Julie Jones; Thomas Reimers; Centurion of Florida, LLC; Ernesto Toledo, M.D.; E. Perez Lugo, M.D.; Errol Campbell, M.D.; and Asbelti Llorens Cordero, M.D. The Clerk is directed to enter a judgment of dismissal in favor of these defendants.

3. In accord with the Court's earlier Order, Doc. 61, Grant's claims

---

[15] Grant argues that his claims against the Chief Health Officer defendants will be further developed through the discovery process and points to his earlier preemptive motion to amend. However, Grant fails to explain how medical records contain necessary facts to allow him to state a plausible claim for relief against these defendants. Because amendment would be futile, these defendants are dismissed with prejudice.

against defendant Corizon Health, Inc., remain **STAYED**. Corizon is directed to file a report to advise the Court of the status of the bankruptcy proceedings on **November 10, 2026**, and **every 120 days thereafter**. At the conclusion of the bankruptcy proceedings, Grant may seek to lift the stay or move to dismiss his claim against Corizon.

4. Grant's Motion Requesting Status Check (Doc. 62) and Second Motion Requesting Status Check (Doc. 63) are **DENIED AS MOOT**.
5. The Clerk is directed to **ADMINISTRATIVELY CLOSE** this case pending the resolution of Corizon's bankruptcy proceedings.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of October, 2026.

Timothy J. Corrigan
TIMOTHY J. CORRIGAN
Senior United States District Judge

TpaP-5
C: Robert L. Grant, #035770
Counsel of record